## Sabin Tucker v. The Territory of Oklahoma.

(Filed September 4, 1906.)

1. CRIMINAL LAW —Uttering Forged Check—Evidence. In an indictment for knowingly, unlawfully, and feloniously, selling, exchanging and delivering for a consideration, a forged and counterfeited check, the allegation of the indictment that the consideration for the selling, exchanging and delivering of said check was twenty-five dollars in money, and of the value of twenty-five dollars, is sufficiently proven where the evidence shows that the consideration paid was twenty-five dollars in money, without the further proof that the value of the consideration was twenty-five dollars, as the law will presume, in the absence of any showing to the contrary, that the payment of twenty-five dollars in money, is lawful money of the United States.

2. EVIDENCE—Impeaching Witness. Where it is sought to discredit or impeach a witness in a criminal case by showing that he has made statements out of court contrary to and inconsistent with his testimony given on the trial, statements made by third parties in the presence of the witness are not competent for this purpose, unless shown to have been authorized by the witness, and it is not error to exclude proof of such statements by such third parties.

3. INSTRUCTIONS—Alibi—Criminal Law. An instruction which states to the jury that a defense of alibi to be entitled to consideration, must be such as to show that at the very time of the commission of the crime charged, if any was committed, the accused was at another place, so far away and under such circumstances that he could not, with ordinary exertion, have reached the place where the crime was committed, so as to have participated in the commission thereof, if a crime was in fact committed, and when the concluding part of such instruction tells the jury that they should consider the whole of the evidence in the case, both that given by the defendant and that given by the territory, and the evidence given touching the question of alibi, as well as that relating to other facts in the case; and if, from all the evidence in the case, the jury entertain any reasonable doubt of the guilt of the defendant, they should acquit him, is not one which places the burden of proof upon the defendant, and is not erroneous.

(Syllabus by the Court.)

*Error from the District Court of Woods County; before J. L. Pancoast, Trial Judge.*

*Cowgill & Dunn,* for plaintiff in error.

*P. C. Simons, Attorney General, Don C. Smith, Ass't* for defendant in error.

### STATEMENT OF FACTS.

On the 16th day of December, 1903, the grand jury of Woods county returned into court an indictment charging Sabin Tucker with having sold, exchanged and delivered, to Pearl Mitchell and W. H. Scott, for a consideration, to-wit: Twenty-five dollars in money, of the value of twenty-five dollars, a forged and counterfeited check. To this indictment the defendant filed his demurrer, which was by the court overruled, to which ruling of the court the defendant expected. The case then came on for trial by a jury, and evidence was introduced by the territory and the defendant. The court instructed the jury, and they retired to deliberate on a verdict, and after being out about 28 hours came into court and asked for further instructions. Thereupon the court gave them two other instructions. The jury afterwards returned into court their verdict finding the defendant guilty as charged. On December 12, 1904, the defendant filed his motion for a new trial, which on being argued, and considered by the court on December 23, 1904, was overruled. To this the defendant excepted. The court then passed sentence on the defendant, to which the defendant excepted, now excepts, and brings the case here for review.

Opinion of the court by

IRWIN, J.: The first assignment of error relied upon by plaintiff in error to reverse this case, is that the proof

fails to sustain the allegations of the indictment as to the value of the consideration charged in the indictment. The indictment charges that the consideration for the selling, exchanging, and delivering of the forged check to Pearl Mitchell was twenty-five dollars in money, and of the value of twenty-five dollars. The evidence of Pearl Mitchell is that she paid the defendant for said check twenty-five dollars in money. We think that this proof is sufficient to sustain the allegations of the indictment, as the words of the indictment and the evidence in support thereof should be taken and construed according to the ordinary understanding and accepted meaning of the language used; and in the absence of any proof to the contrary, the statement that the consideration was twenty-five dollars in money would be presumed to be lawful United States money, and we think that this evidence fully sustains the allegations of the indictment, and it is not necessary to add the further proof that twenty-five dollars in money is of the value of twenty-five dollars.

The second assignment of error is that the court erred in excluding proof of the statements made at the preliminary examination by one Antrobus, who was at that examination acting as the attorney for the defendant. The statement alleged to have been made by Antrobus at that time was that when the justice before whom the examination was pending, announced that the case would be dismissed for the reason that the prosecuting witness, Scott, was not certain as to the identity of the defendant, Antrobus then stated, "Mr. Scott ought to state this to the people, and to the neighbors and friends of the boy for his vindication," and that Mr. Scott be called upon then and there to substantiate the statement that he had said that he had the wrong man,

but would try to find the right one. It is claimed by counsel for plaintiff in error that as at the time of the statement by Antrobus, Scott made the answer, "There has been enough said," that he thereby accepted the statement of Antrobus, and made it his own, and for the purpose of affecting the credibility of the witness, Scott, they had a right to prove both the statements by Antrobus, and the statement of Kinchelow, the justice before whom the examination was held.

Now, we take the rule to be that where it is sought to discredit or impeach a witness in a criminal case by showing that he has made statements out of court contrary to, and inconsistent with his testimony on the trial, that he can only be impeached as to statements material to the issue in question, and to statements made by himself, or others for him. We do not think the rule should be extended so far as to admit of the impeachment of a witness by showing statements made by third parties, even in his presence, unless he in some way authorized such statements. The only purpose of this testimony as to the statements of Antrobus and Kinchelow, was to discredit or impeach the testimony of the witnesses, Scott and Mitchell. An examination of the record will show that the court repeatedly stated to counsel for defendant during the trial and during the cross-examination of the witnesses for the prosecution, that he would permit them to cross-examine as to any statement made by Scott, or made by Pearl Mitchell, but that he would exclude any statement made by third parties, that were not shown to be authorized by the witness, Scott, or the witness, Mitchell, and in this statement, we think the court stated the true proposition of law. The record in this case will show on page 65, that the court did permit the question to be addressed to the

witness, Scott, on cross-examination as to what was said by Antrobus, wherein substantially the same statement, which counsel for plaintiff in error cite as being rejected, was included in the question, and permitted the same to be answered. An examination of the record at this place will show that the court permitted sufficient of the statement of both Antrobus and Kinchelow to go to the jury to illustrate and make clear the meaning of the answers of the witness, Scott, and we think this was all the latitude counsel for defendant were entitled to, as the statement of Antrobus and Kinchelow would be competent for no other purpose than to make clear the meaning and intention of any statement made by the witness sought to be impeached, and this we think was clearly covered by the examination, and we think the court was clearly right in excluding the statement of third parties not authorized by the witness to be proven for the purpose of impeachment.

The third assignment of error is that the court refused defendant the right to lay a foundation for impeachment in the cross-examination of the witness, Pearl Mitchell, and this error is said to be shown by the record at page 28. A reference to that page of the record will show that the foundation sought to be laid for the impeachment of the witness, Pearl Mitchell, was inquiries concerning statements made at the trial by Antrobus, and by Justice Kinchelow, and refers to the same subject discussed in this opinion in reference to the witness, Scott. There is no showing made, and no evidence that tends to show that these statements of Antrobus and Kinchelow were in any way authorized by the witness, Mitchell, and for this reason they were not proper foundation upon which to base an impeachment.

The fourth assignment of error is that the court erred in giving instruction No. 7, which relates to the proof of good character. Counsel for defendant take from that instruction a part thereof, and quote the same in their brief, and insist that the instruction is erroneous. The part they particularly complain of is that the court instructs the jury that in criminal trials where evidence is not conclusive in its nature, that previous good character on the part of the accused, if proven, is entitled to weight in considering his innocence. The part they complain of, is "if proven," but we think the instruction, taken as a whole, which is the only proper way to view an instruction, is a true statement of the law, as the court in that instruction tells the jury that the evidence of previous good character should be taken and considered by the jury in connection with all the other evidence, facts and surroundings in the case, and unless the evidence of guilt is so convincing that it precludes all reasonable doubt, that the jury should acquit, if the evidence of good character when taken in connection with all the other evidence, raises a reasonable doubt of his guilt. We think this is as liberal to the defendant as he had a right to ask, and is in accordance with sound reason and good law.

The fifth assignment of error is that the court erred in giving the eighth instruction. The eighth instruction is as follows:

"You are further instructed that one of the defenses interposed in this case by the defendant is what is known in the law as an *alibi,* that is that the defendant was at another place at the time of the commission of the crime, if a crime was committed. The defense of *alibi,* to be entitled to consideration, must be such as to show that at the very

time of the commission of the crime charged, if any was committed, the accused was at another place, so far away, and under such circumstances that he could not, with ordinary exertion, have reached the place where the crime was committed, so as to have participated in the commission thereof, if a crime was in fact committed. In considering the proof upon the question of *alibi*, you will consider the whole of the evidence, both that given for the defendant and for the territory, applying the same rules as are applied to any other evidence, the law being that when the jury have considered all of the evidence, as well that touching the question of *alibi* as the criminating evidence introduced by the prosecution, then if they have any reasonable doubt of the guilt of the accused of the offense with which he stands charged, then the jury should acquit."

This counsel for plaintiff in error insist is erroneous, as it puts the burden upon the defendant to prove his defense of *alibi* by a preponderance of the evidence. If this contention could be maintained, then this would be an erroneous instruction, and one which would reverse this case. In support of this contention, they cite the case of *Shoemaker v. The Territory*, reported in the 4th Okla. 118, in the syllabus of which this court holds:

"An instruction to the jury that the burden is upon the defendant to prove an *alibi* by a preponderance of the evidence, that is, by greater and superior evidence, and that the defense of *alibi*, to be entitled to consideration, must be such as to show that at the very time of the commission of the crime charged, the accused was at another place, so far away and under such circumstances that he could not, with all the means of travel within his control, have reached the place where the crime was committed, so as to have participated in the commission thereof, and that if the jury believe that the territory has made out such a case as, under

such instruction as to an *alibi,* will sustain a verdict of guil-ty of the crime of murder charged in the indictment, then the burden is upon the defendant to make out his defense of *alibi*—is erroneous, and is sufficient ground for a rever-sal of the case, although the court also instructed the jury, in the same connection, that, all the evidence being considered, as well that touching the question of an *alibi,* as the criminat-ing evidence introduced by the prosecution, if the jury en-tertain a reasonable doubt of the guilt of the accused, they should acquit him."

It will be noticed, on reading the opinion, that the gist of the .decision of this court in reversing that case, was that the instruction was bad on account of the language used, which clearly places the burden of proof as to the *alibi* up-on the defendant. The instruction in the case at bar, we think is not susceptible to that construction. The only part. of the instruction number eight, which might possibly be construed in that way, are the words, "The defense of *alibi* to be entitled to consideration, must be such as to show that at the very time of the commission of the crime charged, if any was committed, the accused was at another place *
* * *."

Now, we do not think it necessarily follows that be-cause the court instructs the jury that evidence of a cer-tain defense must show certain things, that this means it must be shown by a preponderance of the evidence. Evi-dence as to the defense of an *alibi,* if it would have any weight with the jury, or be of any avail on the trial, must show something. That is, the testimony must be such as to lead the mind of the jury to believe to a certain degree that the defendant was at another place than the place of the crime. This instruction does not say that the mind of the

jury must be convinced, or that the degree of certainty shown by the evidence of an *alibi* must be such as to satisfy the jury by a preponderance of the evidence that the facts set up in such plea are true, but only means that the evidence must tend to show that the party was at some other place than that of the crime. And when we read the instruction as a whole, it is perfectly apparent that the court did not mean to indicate to the jury, neither does the language used in the instruction indicate to the jury, that they were to be satisfied by a preponderance of the evidence that the allegations contained in the plea of *alibi*, or the evidence in support thereof, were true, because in the same instruction the court says to the jury in plain unmistakable language, that if, after considering all the evidence in the case, including the evidence touching the question of an *alibi*—that if from all the evidence, as well that with reference to an *alibi*, as the other facts and circumstances in the case, and if from the evidence as a whole, they entertain any reasonable doubt of the defendant's guilt, they should give him the benefit of that doubt and acquit him. And in this, we think the instruction in the case at bar is clearly distinguishable from the instruction in the Shoemaker case, held bad by this court.

Counsel for plaintiff in error also cite in support of their theory, the case decided by the California supreme court in the case of *People v. Fong Ah Sing,* 28th Pac. 233, where the California supreme court hold that an instruction was bad in the following language:

"In a trial for murder, it is error to charge that, if the jury find the defendant to have been at another place, as, for instance, in the society's rooms, at the time of the alleged

shooting, and if his being there then creates a reasonable
doubt of his having been present at the place of the alleged
crime at the time of its alleged commission, he should have
the benefit of that reasonable doubt and be acquitted, as it
compelled the jury to find as a fact that he was at another
place at the time of the shooting, and did not extend the
question of reasonable doubt to his presence at the club-
rooms."

Now, the California case, in our judgment, is clearly
distinguishable from the case at bar, because in the Cali-
fornia case, the instruction laid down to the jury that be-
fore he could be acquitted, they must be satisfied by the
proof, that he was at some other place than the place of
the crime, making the substantive fact of where he was the
basis from which they must draw their conclusions of rea-
sonable doubt. The case at bar simply says they are to con-
sider the evidence as to his being at some other place than
the place of the crime, and if from that evidence, when
viewed in the light of all the other evidence in the case, they
entertain any reasonable doubt of his guilt, they should ac-
quit him.

Counsel also cite us in support of their position, the case
of *Wisdom et al v. People,* 17 Pac. 519, where the Colorado
supreme court hold that an instruction, stating that to render
proof of an *alibi* sufficient, the evidence must cover the whole
time of the transaction in question, so as to render it impos-
sible that the defendant setting up such defense, could have
committed the act, is erroneous, as being liable to mislead the
jury; and in the body of the opinion, the court in comment-
ing upon that point, say:

"But if the language so used relates to the sufficiency of
the proof of the *alibi,* then the instruction is erroneous in

5—Vol 17

that it requires a greater degree of proof than might be suffi-
cient to create a reasonable doubt of the guilt of the accused,
for while such testimony might not be sufficient to show that
it was impossible for the defendants to have been present
at the commission of the burglary, it still might have been
sufficient to have raised a doubt in the minds of the jury as
to whether they were present or not, and such doubt might
have created a reasonable doubt of their guilt."

Now, we think the Colorado court was clearly right in
holding that such an instruction was liable to mislead the
jury, but a reference to the instruction complained of in the
case at bar will show that no such language is here used, but
the contrary is clearly set forth in said instruction, because
the jury are by this instruction clearly advised and admon-
ished that if this evidence of an *alibi* raised a reasonable
doubt in their mind as to the defendant's guilt, they should
acquit him.

The only remaining assignment of error relied upon is,
that after the jury had retired to deliberate on their verdict,
and had been out for some time, they returned into the court
and asked for further instructions. In answer to the re-
quest of the jury, the court gave instructions numbers eleven
and twelve. In considering this assignment of error, we
have made a very careful examination of the record, and
after such examination we are clearly of the opinion that
the trial court exercised a very high degree of caution, and
great care in protecting the rights of the defendant, as the
court, notwithstanding the urgent manner in which the jurors
interrogated him as to certain facts in the case, and the
proceedings taken to draw him out as to the credibility and
weight of certain evidence, entirely refrained from express-

ing any opinion as to the credibility of the witnesses, or the weight of the testimony, and every question addressed to him along that line was carefully answered, and in such a way that no juror could draw any inference as to the condition of the mind of the court upon the question of the weight or credibility of the evidence. The record shows that the court repeatedly stated to the jury that that was a matter peculiarly within their province, and something that he had no right and no desire to express any opinion on; and when it comes to the question of the meaning of the instructions referred to, and when the matter was addressed to the court for legal definition of certain things involved, on which inquiry was made by the jury, the court then gave the instructions complained of, to-wit: instructions No. 11, and 12. Instruction number 11 is as follows:

"You are instructed that as a matter of law, the dismissal of the preliminary examination before Justice Kinchelow, can have no effect upon the prosecution of the case in this court, and cannot be held to prevent a trial here upon the charge alleged in the indictment.

"The hearing before Justice Kinchelow was what is termed a preliminary examination, and whether dismissed or proceeded with to the end, cannot be used in any way as a defense here in the trial of this case.

"That which took place there which is of importance here, is what Miss Mitchell and Mr. Scott said, if anything, concerning the defendant and his connection with the offense charged in the indictment in this cause."

This instruction was given in answer to the interrogatory propounded by one of the jurors to the court as to what the effect on this trial was of the dismissal of the preliminary hearing, and we think, under the circumstances, that

this instruction was perfectly proper, and that any and all rights the defendant might have in connection with that subject were fully saved by the latter part of that instruction, which calls attention to any statements made by the witnesses, Mitchell or Scott, concerning the identity of the defendant.

Instruction number 12, which was given. by the court in answer to an interrogatory propounded by one of the jurors as to what was the meaning of the language used in instruction number ten, wherein the court instructed the jury as to their duty in regard to the testimony of any witness who had sworn wilfully and intentionally falsely as to any material fact in the case. Instruction number 12, is as follows:

"You are instructed that by the use of the language in instruction number 10, if the jury believe that any witness has knowingly, wilfully and intentionally sworn falsely to any material fact in the case, the jury may disregard the whole of the testimony of such witness, except insofar as it is corroborated by other credible evidence, facts and circumstances in the case is meant that where a witness has knowingly, and intentionally sworn falsely to any material fact in the case, you may, (if you regard the testimony of such witness as altogether unworthy of belief) disregard the whole of the testimony of such witness, except in so far as it is corroborated by other credible evidence, facts or circumstances in the case.

"If you believe that any witness has intentionally sworn falsely to any material fact in the case, but the testimony of such witness in other particulars is corroborated by other credible evidence, facts or circumstances, then you are not at liberty to entirely disregard the whole of the testimony of such witness, but should consider it in connection with

all the other evidence, including the evidence of corroboration, and give it such weight and credit as in your judgment you think it is entitled to."

Now, the part of this instruction which is seriously complained of by counsel for plaintiff in error is that part which is put in parenthesis, "if you regard the testimony of such witness as altogether unworthy of belief" when viewed in connection with the other language of the instruction, that as to such matters where such witness is corroborated by other credible evidence in the case, they are not at liberty to disregard his testimony as to such facts and circumstances as are corroborated. Counsel for plaintiff in error claims that this is inconsistent. That if his testimony is unworthy of belief, then, though it may be corroborated by other evidence, the jury have no right to consider it as evidence. But we are of the opinion that this position is untenable. It is a notorious fact that even a notorious liar may under certain circumstances, and at certain times, possibly tell the truth, and the jury would not be at liberty to disregard testimony as to a fact shown by other credible evidence in the case, simply because a man whom they believed unworthy of belief had testified to it. In other words, facts which are shown by competent, credible evidence, to the satisfaction of the jury, should not be disregarded simply because a witness whom they believe to be unworthy of belief, had testified to it. While this instruction, the record shows, was hastily drawn, and is not as clear as it might be made, and the language is not as definite as more mature reflection would dictate, still, on the whole, we think it states correctly the law, and is not subject to the criticism made upon it by counsel for plaintiff in error.

Having examined the entire record, and finding no sub·
stantial error therein, and that no substantial right of the
defendant has been lost, and believing that a fair and im-
partial trial was had, the judgment of the district court is
hereby affirmed, at the costs of the plaintiff in error.

Pancoast, J., who presided in the court below, not sit-
ting; Burford, C. J., dissenting; all the other Justices con-
curring.